Good afternoon. My name is Paige Tomaselli and I'm here today on behalf of Appellate's six non-profit organizations that represent the environment, consumers, animals, and farm workers. I'd like to reserve five minutes of my time for rebuttal. This case involves the Food and Drug Administration's failure to comply with the National Environmental Policy Act, or NEPA, when approving drugs for animals, drugs that are released to the environment, contaminating water and air, and harming threatened and endangered species and other wildlife. The narrow issue before the court today is whether appellants are required to file a citizen petition before challenging 18 final animal drug approvals in court. The answer is no, because animal drug approvals are final agency action, and here a citizen petition does not serve the purpose of exhaustion as set forth in Section 704 of the Administrative Procedure Act. What would you help me with the process? The approval process is secret, is that right? Yes, Your Honor, the approval process is not public. The appellant's plaintiffs were not granted an opportunity to participate in the process. Did you know that it was happening? No, you don't know anything about the process until the drug approvals are final. The first time that you're made aware of the final agency action is when it is published in the Federal Register. These drug approvals are regulations and they're published in the Federal Register, and that's when the public becomes aware that the agency has approved a drug. But did the District Court acknowledge that? Kind of. So, is it your understanding of what the District Court held that you have to go back after final approval and file a petition, a District Court held that in order to challenge these final agency actions for the agency's violation of EAPA, we would have to first submit a citizen petition with the agency and then wait almost indefinitely for the agency to respond to that citizen petition. So, but it's our opinion that doesn't meet the strict requirement that's laid out in Section 704 of the APA. Okay, I've got a little bit of a procedural question. Yes. How much do you learn when it's published in the Federal Register about the approval of these drugs? You learn very little. The agency, it's a very small Federal Register notice. The agency puts a little bit of information in it about the drug and links to a website that talks briefly about the EAPA process that the agency went through, but in order for appellants to actually gain information about the drug approvals themselves, we failed to respond to those final requests, so we were forced to file a petition to get the information from the agency. Okay, and I'm curious, how much more did you learn through the FOIA request that you didn't know when the Federal Register was complying with? We learned a significant amount about the information that was submitted in the application for the drug approval process. So, we learned a significant amount, but the EAPA documentation that was available through the Internet was about the same amount of information that we got through the drug approval process, sorry, through the FOIA request. So you didn't learn a whole lot more, is that true? It depends on each particular substance, so it's hard to say, because what we did was we filed a FOIA request based on all Ractopamine-based drugs, and this case would involve 18 different drugs, so I can't say with certainty how much we learned for every specific drug through the FOIA request, because the information, we're actually still involved in litigation, and it's coming in on a rolling basis, so it's difficult to say for certainty for each drug how much additional information we've learned through the FOIA request. Sorry, if that answers your question. So, in order for an agency to require exhaustion of administrative remedies, two things are required. First, it needs to require an appeal to superior agency authority, and second, it needs to render the underlying approval of the operative pending appeal, and the citizen petition procedure doesn't do that here. First, a citizen petition is not an appeal. It is a brand new administrative action, and it has a separate administrative record. It's not something that's used to inform the underlying decision, and generally, a citizen petition is used to generate a final agency action where there is none, not used to appeal an already final agency action. Second, the citizen petition will not render the underlying drug approvals inoperative. Well, how does the exception apply here that this is not an appeal, but a citizen petition? Excuse me, Rana, the exception? Yeah, the exhaustion. So, it's our position that, again, that a citizen petition is not, it's not an appeal to superior agency authority, that because FDA doesn't have regulations that comply with Section 704 of the APA, that we weren't required to follow any additional exhaustion measures when those final agency actions were immediately challengeable in court. Now, FDA could, of course, create exhaustion regulations that comply with Section 704 of the APA, but it's our position that the citizen petition just doesn't do that. And so, well, for two reasons, Your Honor. First of all, because, as I mentioned, it's not an appeal to superior agency authority, but even if this court were to assume that it was an appeal, it doesn't render the underlying animal drug approvals inoperative, which is the other requirement in Section 704 of the APA. Those animal drug approvals are operative now, irreparable harm is happening to the environment now, and filing a citizen petition wouldn't have any effect on the operative nature of this. No, a citizen petition would not stop the approvals. And so, because courts will aware the purpose of both the National Environmental Policy Act and Section 704 of the APA is to make sure that the agency considers all the factors before it creates a final agency action. Here, the agency's citizen petition just simply doesn't do that. In both circumstances, the citizen petition regulations don't allow pellets to properly exhaust underneath or the APA because the drugs are on the market and they're causing, as I mentioned, irreparable harm to the environment. But how does the agency then get to emphasize this discretion and knowledge regarding the challenges if there is a requirement for a citizen petition? So, Your Honor, it is our position that, of course, the agency has an independent duty to comply with the National Environmental Policy Act when approving these drugs. And because of the special circumstances that are laid out here, pellets didn't have the opportunity to issue, exhaust, or file comments on the environmental assessment or any of the NEPA documentation. But we also, it's also our position that we're not offering any new information to the district court for the first time. Our complaint was based on information that the agency gave to us and or information that was so obvious that the agency should have known about it but didn't like the number of animals raised for food in the United States every year. So, it's our position, of course, that the agency should have known that information and they did not. And so, I think that our position is consistent with both this Supreme Court's precedent in Darby as well as this court's precedent in Idaho watersheds. Now, in Idaho watersheds, the court asked the question of whether the agency's administrative appeal regulations provide procedures that effectively render inoperative the challenge decision pending appeal. It said, if the regulations do not allow for the decision to be rendered inoperative pending appeal, that exhaustion of administrative remedies is not required and the matter was properly before the district court. And that's exactly what we submit here is that the thesis petition process will not render the underlying drug approvals inoperative. And so, therefore, our case was proper in front of the district court. What's the closest case that would guide us here? Because it's very unusual, there's a situation in which you don't have to present your arguments to the agency. Yes, Your Honor. I would say, of course, I would say that Idaho watersheds is the circuit's case on the issue. But there isn't a case that I am aware of where there's a secret nature of the approval process where the appellants were allowed to participate in that process. But I would say that the Wisconsin case, which we cited in our briefs, allowed plaintiffs to challenge the agency's, the FDA's final animal drug approval and that plaintiff brought me the claims and the court did hear those claims. The agency there, the FDA there, didn't raise the citizen petition defense there and didn't claim that the plaintiff there had to file a citizen petition. So I would submit that that's the only analogous case to the situation with the same defendant. Excuse me. I would say that this is also consistent with Darby. In Darby, the court there said that the purpose of section 704 was to permit agencies to require this appeal to superior agency authority before an examiner's initial decision became final. Before you get to that, I guess I'm curious as to when you say final decision, does that mean that if you file one of those citizen petitions, does that mean that they wouldn't consider it or look at it or do anything with it? Because then I would question that again when you say it's final. So, Your Honor, finality of course does have a different meaning than exhaustion. Finality determines whether a decision inflicts actual and concrete harm, whereas exhaustion talks about the administrative and judicial procedures by which a party can challenge those decisions. And here, the underlying drug approvals would remain final even if we filed a citizen petition. That's why we don't submit that it's an appeal. Those drug approvals would remain final, and the citizen petition process would conduct a parallel process where it would have its own administrative record and conduct its own proceedings. And so it doesn't fit as far as appeal to superior agency authority. And that's what we're arguing is that, again, FDA could come up with regulations that fit the standard laid out by Congress in Section 704 of the APA. It just simply didn't. So just as you were saying, Judge Drake, and as Pete says in Darby, the agency can create provisions so that that initial decision becomes unfiled depending on the exhaustion process, but that's just not what we have here. So I would also say that I would point the court to FDA's official interpretation of its regulations, and the agency's official position, not its litigation position that it's taking here, is that an existing FDA regulation can be challenged by any time, by any interested person. Here they're saying that no, their official position is that they would have to take, that fellows would have to file a citizen petition. But the official FDA position, which came in the preamble of the 1975 version of the citizen petition regulations, that hasn't changed. And according to FDA's own regulations at 21 CFR 10.85, what the agency says in the preamble to a regulation is considered an advisory position. So if the agency wants to change its mind about how the citizen petition process can be used, it can do that by creating a new advisory position, but it hasn't done that. I'm still wondering, the FDA could not correct any deficiencies that may have existed in the process, and they couldn't take a second to look at things if you filed a citizen petition? The FDA could not grant appellants effective relief here. I think that's the point that you're getting at. Because the FDA, under the Federal Food Drug and Cosmetic Act, the FDA can withdraw an animal drug, but those withdrawal procedures are based on the safety of an animal drug. It requires the FDA to make a finding of safety, and then there's a very lengthy administrative proceeding that appellants would not be able to participate in, or may not be able to participate in. And at the end of all of that, the animal drug could be withdrawn. But that's not the relief that appellants are seeking here, and the agency cannot give us the relief that we're seeking here. What relief are you seeking? We are seeking for the parties to be returned to the status quo. We're seeking the 18 approvals to be vacated, and the court's request that the agency go back and conduct a proper NEPA process in the first instance, so that that NEPA process, which is supposed to be a prerequisite to a final agency action, which is supposed to inform that decision, so that the agency can go back and conduct that NEPA process, and then decide whether or not to approve those drugs based on a proper NEPA process. If the drug is taken off the market, that's effectively the same remedy that the animals are no longer being subjected to the drug. Your Honor, what appellants are seeking is not for the drugs to be withdrawn. We are not arguing here that that's the remedy that applies. What we're seeking is for the agency to make informed animal drug approval decisions based on adequate NEPA analyses in the first instance. I thought your argument was that these drugs were harmful to the animals. Actually, our argument is that they're harmful to the environment. What we're alleging is that these drugs are released into the environment and could cause irreparable harm to the environment, and that the agency didn't look at the significant effects of its decision when approving the animal drugs. Well, I'm just wondering. I read with interest the briefs of the law professors here who say that the FDA doesn't really have a good process for evaluating environmental harms. And it's principled, and I take it that that means it's principled concern is with the safety of the drug. So I'm just wondering, how is this going to work? Well, the court needs to act as a check on the agency's NEPA analysis. We're asserting that they're not conducting proper NEPA analyses in the first place. Well, I understand that, but are you asking that they change the whole process so that it's no longer secret and so that it's public and you can come in and give them environmental information? Because that seems a little beyond the scope of what this court could do. Absolutely not, Your Honor. Are you asking for that? No, we are not asking for that. What we are asking for is the agency to comply with the National Environmental Policy Act in the first instance, for them to conduct a proper NEPA analysis when it approves these drugs, and only the court can give us adequate relief. Did they already supposedly do that when they looked at the drugs in the beginning? They supposedly did that, and what we are arguing is that it's proper for our case to be in front of the district court to be reviewed on the record that was in front of the agency at the time it made the decision so that the court can determine whether or not the agency was confined with the law when it made those approvals. And that record? We were in the middle of meeting and conferring on the administrative record at the district court. We do have the initial submission from the agency. It was about 3,000 pages, and we have reviewed that record, yes. So we do have that record. I'm heeding it to court all the time, but I would ask if you have any more questions. Counsel, while you're sitting there, I would want you to Paragraph 33 of your complaint where you talk about the adverse effects on animals, and then you come back to respond as to whether or not the relief would be effective in view of your complaint regarding the negative effects of the drug on animals. I can respond now if you would prefer. So the complaint was all of the harms. We listed all of the harms that we currently know about the drugs, but we did so incognito. All of the harms that we listed in the complaint are cognizable under NEPA, and so the... It's just a procedure. Yes. Yes, and what we're asking for is for the agency to conduct a proper NEPA analysis and to look at all of those individual harms and how they could significantly impact the environment. All right. Thank you. Thank you. Good afternoon. My name is Jeff Buehler, and I'm here on behalf of the FDA. I'm going to take 15 minutes and then give five minutes to the intervener at LeucoHealth. I just want to touch on a few things off the bat. When an agency conducts a NEPA analysis, when it complies with its procedural statute, what usually happens is an interested group from outside a third party that may want to challenge that action raises its arguments to the agency. It raises its grievances. It alerts the agency to its position so that the agency can then address its concerns. And the agency is going to allow you to apply its expertise, its technical knowledge, and address those concerns. Here it's very different. This Congress passed two statutes that were very clear. The FDA, when it's conducting its NEPA analysis, when you have a new drug application, the FDA cannot disclose information. It cannot disclose information about the manufacture of the drug, and it includes environmental analysis that the FDA does. That's the Trade and Secret Act, and that's the Federal Drug and Cosmetic Act. Congress made that decision. The unique law professors may want to strike a different balance, and they may think that it'd be great if everyone participated throughout the process, but as Congress has tried to consider the effects of its actions, not this quarter, and certainly not the distant quarter. What Congress would do, excuse me, what the FDA has done here is enacted regulations that allow participation by parties who want to raise concerns about environmental analysis, and they do so after the information is made public. It's true that in some circumstances, the FDA can and has made information public before it's approved the drug, and I can provide the court with supplemental evidence of this, but there's a recent drug involving genetic modification of mosquitoes. The application was already public. The drug manufacturer had already allowed the agency to communicate this, and there's a public process going on. Counsel, what's your response to opposing counsel's decision that this is now final agency action that can be challenged in district court? Right. So I think what you have to look at when you talk about exhaustion of administrative remedies, and this is in the case law, it's a case by case. You have to look at the context of the case, and what we're looking at here is they're now claiming, which is kind of surprising because I encourage you to look at their complaint. They themselves use the term new information. They themselves use the term new circumstances. So what we're talking about here is they're complaining, and as I understood opposing counsel here, she's saying that she wants us to engage in a new process. She wants us to consider all this information. How we do that is through the citizenship process. That's how you get an agency's final action. That's how you know what the district court did when they came to the district court. The district court said, how am I supposed to know what the FDA thinks about your arguments? You didn't raise them. But that was an approval of the drug's final agency action. Approval of the drug is a final agency action. Indeed, we've said that. We've said it every single day now. I'm not trying to argue with that. What I'm trying to suggest is there has been no final agency action as to the merits or even a consideration of their arguments. We have nothing. We have nothing in the record to say that the FDA has considered any of their arguments. Is that kind of blatant? I mean, you know, you can't just throw me out of the bag and the drugs are out there. And they have to come in, and after all that's happened, it's... And, Your Honor, I appreciate the concern, and I understand. It is a unique context, and courts are used to reviewing. You just had a case involving the Forest Service. I mean, when agencies take action underneath, but you usually have this public participation. Congress, for the approval of drugs, for animal drugs and regular drugs, does not allow the agency to disclose this information. Balancing out that, how the compliance with the DEPA can be ensured for that there's no circumstances. Absolutely. And this comes from the case I was saying. You need to comply with DEPA to the extent required. Balancing out other statutes, and that's exactly what it says. National security cases, where the Navy puts a nuclear submarine chase up in Washington, and they're not allowed to disclose some information. And so, there is a limit. There are cases in DEPA analysis that can be completed during particular approval of an agency's action where the public was not necessarily involved. And we cite some of those cases. But here, we're not saying there's no judicial review, nor are we saying the public can't be involved. Absolutely. They can come in as a third party and raise all the arguments that they want. They can talk about evidence that they should have considered. They can talk about all the things that they've done in their complaints. And the citizen petition process is the way for the agency then to take those arguments and consider them in a process. And the agency can do a whole lot of things to address their concerns. The things that a district court's going to have a very hard time doing if you adopt their arguments. So, for example, some of their environmental concerns. The agency may decide to change the label of the drug. The agency may decide that it wants to place restrictions on what the manufacturers can do. The agency could withdraw the drug, exactly what they're asking for. There are ways, and some of you read their complaint, and we're at the motion as misstates. We have to assume that those allegations are true. They've alleged human safety risks. They've alleged that in their complaint. I'm assuming that's true. If that's true, the agency could withdraw the drug. The thing that's kind of interesting to me is that these same drugs have been banned in other countries, even China and some other places, and it raises a little suspicion about the effects that they have on the environment. No doubt, Your Honor. To the extent that there is scholarship or there is evidence that the agency should have considered or needs to consider, the citizen petition process is the way that we go about this. That way, when it comes to the district court for judicial review, the district court puts a record in front of it. It has the agency's views. We have final agency action, and we have the petition that challenges on the complaint that says that they didn't comply with NEPA, and the complaint has been dismissed on the ground there has been no citizen's petition and that that has to be done first. Yes. So they file a citizen's petition with no, after the drug has been approved and is out there in use, and there's no time limit on how long the agency can take. So how do we know when is the court ever going to look to see whether or not the environment In this particular case, Your Honor, the district court offered to see the case, offered to continue having jurisdiction and actually monitor to make sure that the agency complied with this and addressed all the concerns that were due to that. So you said, no, we don't want that. We want dismissal with prejudice because they wanted to be in front of this court. So, of course, so if you're worried about addressing these concerns, the other thing that helped me is that they know how this works. They filed citizen's petitions in other contexts. This is not something new. The Council for Environmental Quality that oversees me has reviewed the regulations that the FDA has in place. They're aware of the citizen's petitions, and they have approved these regulations. This is how it works in the context of FDA approval. Your Honor, I asked questions about the best cases, and I find it somewhat glaring that plaintiffs have totally ignored American physicians. I went through the D.C. Circuit. It was a district court, D.C. Circuit, even on a petition to the Supreme Court. The case is very similar here. Cody Labs, a case out of the Tenth Circuit. Holistic Candlers, another case in the District Court of D.C. I.O.'s Court in Congress in the Ninth Circuit. Dietary Supplement, another case that we cited, where this court specifically said that an APU cannot withdraw into district court without allowing any agency to apply its special expertise. Are you suggesting that we could remand the district court with instructions to vacate the stay, dismissal and stay in the proceedings, pending the agency's proceedings on the citizen's petition? I'm not sure, Your Honor. I'd have to think about this, because it's an interesting procedural question as to what you do when you've got it dismissaled with prejudice and now we've got to see you kind of unscramble that egg. I'd have to give that to you, Your Honor. I'm not really sure how the court would do something like that and say that the district court should have, that that was data cited. No, they wanted to give the case up to us, and we're just getting ahead of those proceedings. And I understand that concern, Your Honor. But no, I think when you look at the complaints that the parties have filed in this case, what you have is you have new information. You have new circumstances. You have information that allegedly was not considered by the agency and the district court correctly recognized under these circumstances. The right thing to do is have the agency look at it first so that there's a record of that consideration. And I will add, this is exactly what Darby says, the Supreme Court's decision in Darby. When you look at the Supreme Court's decision, it says that you can have an agency regulations requiring administrative exhaustion, plaintiffs point to Section 704 in the last sentence, a very convoluted paragraph from that that I've read too many times and still doesn't make much sense to me. But what I do know is that it's talking about appeals, and we're not arguing with each other here. The cease and desist is not an appeal. It's not reconsideration of initial decision. It's what's required in the first instance. These are UIF 2 diametrically imposed views of 704. Well, I think what we're focusing on are two ships facing the night. I mean, we're talking about a sentence that just doesn't apply, and I say that too. What I say is, and this is what Darby says, it's like what the language of what the Supreme Court actually says. And what he says is you can have administrative exhaustion by statute or you can have it by rule. Here we're dealing with agency rule. The Supreme Court says the traditional notions of administrative exhaustion survive even after Congress enacted the APA. And there's a number of cases post-Darby that we point to in our brief, and I gave the laundry list earlier, that have interpreted citizen petition process in this specific context and held that it complies with Darby and Section 704. You point to the 1975 Federal Register, the same page, 22957.  Administrative petition must be exhausted. Your remedies must be exhausted. So there's a line in there about mayhap. There's also a line in there that says must be exhausted. I don't think it comes out one way or the other. In terms of what they're seeking here, I mean, I think it comes out of very full-time frame articulate. I think that you just have to look at the complaints. They want the drugs off the market. I understand that that's their argument. They can actually get that through a citizen petition. That's why the district court did not abuse this expression when it held that it could be a citizen petition. It did not do so here. Unless the court has any further questions, I'll turn it over to the interviewer. Thank you. Thank you, Your Honor. Good afternoon. I'm Emily Henn of Coington and Burling on behalf of Intervenor Defendant Appleby Alonco, USAP. I think this argument overlooks the fundamental bedrock of exhaustion, which is to give the expert agency the first shot at an issue. Here, it is necessary for this court, and it was necessary for the agency, to reconcile two federal statutes. And this court has held, as has the Supreme Court, that NEPA was not intended to implicitly overrule any other federal statute. Given the relatively closed nature of drug approval processes, the first opportunity that plaintiffs had to present their evidence and their arguments was post-approval. That is clear now that I speak to you. And what plaintiffs have failed to explain is why this particular circumstance should excuse their failure to exhaust. There can be no question that plaintiffs' claims raise new evidence. Their complaints, and we've gone through this in our brief, their complaints allege that most of the analysis in the NEPA documents is more than 15 years old. They allege that the FDA failed to account for significant new circumstances and information. This is at ER 213 in paragraph 104. They allege, particularly with current levels of use, that the agency has failed to consider that new evidence in its NEPA analysis. And what this court's precedents make clear is that the rationale underlying exhaustion is to avoid premature claims where the agency could address the concerns it first presented to the agency, and also to ensure that the agency possessed of the relevant expertise gets the first shot. What incentive is there, if it's already final, for the agency to look at this in a relatively expedited manner? Well, the agency's regulations provide that the agency can look at environmental concerns through a citizen petition. That's 21 CFR. I don't know if I mentioned the site. 5.52B. And the incentive is to fulfill the agency's mission to ensure the safety of drugs on the market and to ensure as well that they comply with NEPA. And the agency has made clear through all of its regulations governing its NEPA process that it believes the proper procedure is for plaintiffs to bring, or challengers to bring, claims through a citizen petition. The delay that was raised, or potential for delay that was raised by the Amaki law professors and by plaintiffs, under this court's precedent, the mere fact that it takes time to exhaust administrative remedies, these are complicated issues and highly scientific, the mere fact that it takes time to try to excuse exhaustion, that's from the dietary supplemental coal case. Plaintiffs also have failed to file a citizen petition during all of this time, delaying in some instances with some of these approvals more than six years, or close to six years, I should say, before bringing a claim. So the idea that they should be allowed to go straight to federal court on the ground that they want to avoid delay doesn't make a lot of sense in that procedural posture. Counsel for the government already, if not already, explained that the district court did offer to maintain jurisdiction to monitor the procedures of the agency and the process, and petitioners declined that. And, of course, plaintiffs also have recourse if the agency- If I ask you the same question- Pardon? If I ask you the same question as the government, would you have an objection to having conscript men tell the district court to not monitor the progress of the citizen petition? I'm not sure that district- We've not briefed whether the district court would have jurisdiction to do what the district court proposed, and I think supplemental briefing on that might be appropriate in that circumstance. I don't know what plaintiff's position on that is either. But I don't think it's appropriate to speculate that the agency will necessarily delay when confronted with what plaintiffs claim are very serious concerns about human and animal health, as well as the environment. The plaintiffs are trying to recast their claims as only dealing with environmental concerns, but their complaint, the bulk of their complaint and their factual obligations, is that there are concerns about this drug causing safety concerns, both for humans who work with animals, animals themselves. And those kinds of issues are at the core of FDA's jurisdiction and expertise, and it would be appropriate to let the agency first specify those issues. What plaintiffs are seeking from this court is a ruling that would allow lots of parties to go straight into federal court, completely bypassing FDA's procedures and expertise, and handing district courts lots of cases that are highly technical, that implicate exactly what Congress decided to delegate to the agency. The American Physicians case in the D.C. District Court is an interesting one. There, the plaintiffs were challenging the approval of Plan B, the emergency contraception drug, and that was a drug approval, so they made the same argument that this is final agency action, even though they had not had the opportunity to participate in that relatively closed process. And the district court heard very similar arguments in that case to what this court is hearing from plaintiffs, and determined that under Darby, that there were mandatory exhaustion regulations in play, and that under Darby it was not appropriate to excuse the exhaustion that the APA required it. The FDA's Citizen Petition Regulation, 21 CFR 1045B, is mandatory. It states that a request that the commissioner take or refrain from taking any form of administrative action must first be the subject of a final administrative decision based on the petition. Plaintiffs tried to rely on the second sentence of Section 704 of the APA to argue that this particular exhaustion requirement doesn't somehow comply with Section 704. Section 704 has two sentences. The first says that an agency action may be refutable by statute, and final agency action for which there is no other adequate remedy or subject to judicial review. Here, there's been no agency action on the plaintiff's claims, and that's where we think Darby and Section 704 require exhaustion. The second sentence of 704, Judge Rawlinson, you referred to the exceptions list there, and we agree that that's the right way to read Section 704, that second sentence. What it says is that exhaustion will not be required in, it says, except as expressly required by statute, agency action. Otherwise, final. It's final whether or not there has been presented or determined three things, an application for a declaratory order, an application for any form of reconsideration, or an application for an appeal to superior agency authority. And both sides agree that this is a petition. Regulation does not require an appeal. All that's being asked here is that plaintiffs bring their claims first to the agency with the expertise to address them. So with that, I will stop. Is there any further questions? No. Thank you all. Thank you. So first I'll just start with the American Physicians case. As opposing counsel mentioned, it is a case in the D.C. Circuit, and it was the district court case that they were citing. The discussion on exhaustion, first of all, the court discussed Darby, but it didn't discuss the operative language of Section 704. Moreover, the court didn't discuss that in that case there was no administrative record. But here we do have administrative record, the record that was in front of the agency at the time it made its decision. Moreover, because the court found that there was no standing in that case, the exhaustion discussion is also dicta. So I also want to discuss the opposing counsel says that our entire complaint is based on new information, but they take that sentence really quite out of context. So I think it's important just to read it here. It says that most of the analysis in those NEPA documents is now more than 15 years old and fails to account for significant new circumstances and information irrelevant to environmental concerns raised by the agency, particularly the widespread use of ectopamine and other feed additives. When Pelham's were discussing 15 years, we were talking about the time that they did the environmental assessment, which was in 2001, and the time that they made the approvals that issued in this case between 2008 and 2014. So these quote unquote significant new circumstances, this is just the events that happened before the agency actually approved the drugs, not some new information that we have, that we haven't shared with the agency. It's information that the agency shared with us, and we are saying that they didn't consider. Also, the opposing counsel conflates issue exhaustion and administrative exhaustion here. The cease and petition process is not the proper process for issue exhaustion. Moreover, the district court could waive issue exhaustion if it wished to. There are other ways that we could put information in front of the agency, such as submitting a letter or other things, but they're requiring us to file a cease and petition, which simply doesn't comply with Section 704B. How do you propose, if we were to agree with you to the extent that you should have been required to exhaust before you brought a claim in federal court, but we were to agree with the agency that they ought to have a chance to look at this because there is agency expertise, what would we do? Well, first of all, Your Honor, I would say that we're not just concerned with this case, but with any case, obviously, making sure that the agency complies with NEPA. And so, in this particular circumstance, if there was some kind of, well, first of all, I would back up and say, again, we're not bringing new information in front of the agency. But in order to make some kind of reasonable process, we would want to timeline on it that was fairly short, where the agency responded to our concerns in short order, and that's also what we think that the agency is. And who could do that? The district court? The district court could do that. Yes. Yes, Your Honor. Because we have no record. There needs to be a record, eventually, of what the agency. If we agree with you, there's going to have to be some kind of record of what the agency did with this. Right, Your Honor, but there is a record of what the agency did, and that's where our challenge is based on. The records are before the agency at the time it made its decision. That's all we're basing this challenge on. So, any new information that, you know, we could bring in a letter that could add to the record, but that's not necessary for final agency action, which is the NEPA. Yeah. All right. Thank you, Kelsey. Thank you to all the constables and all the partners. Because this bond is submitted for decision at the court, and we are in recess until 9 a.m. tomorrow morning.
judges: Schroeder, Rawlinson, Drain